Case number 09-3205, Albert Goodman v. Per Hanson. Okay, would the lawyers please step up and introduce yourselves, please. Good morning, Your Honor. My name is Steve Swofford on behalf of the defendant, Per Hanson. Court please, Donald Johnson, for a total of 15 points. Okay, you understand you have 15 minutes and you have some time for a vote. Thank you. Out of the 15 minutes. I understand. And Justice Cahill's third panel member, who will be fully participating in the case. Fine. Okay. Once again, I represent the defendant, Per K. Hanson, who was an attorney, who for some period of time represented the estate and trust of Edith Appleton up until January of 2005. And a dispute arose over his handling of the estate and trust. And he withdrew and he was sued for the late filing of the Illinois estate and generation skipping transfer tax return in 2005. And at the end of that year, that suit was settled and he obtained a release of liability not only from his late filing of that return, but from anything else he could have been sued for in that suit, as well as from his handling of the estate and trust. About a little more than a year later, he was then sued again by a representative of the estate and trust, this time with the claim that he negligently handled the filing of the federal tax returns for the estate and trust, whereupon he moved to dismiss the second filed suit based on the specific terms of the release, since the release had provided that he was released from the handling of the estate and trust. And also based on – Did you hear anything that mattered with this release? I mean, is this release not a good release? I think it's a great release. I'm sorry. Maybe I misunderstood the question. I mean, I don't think – Did you draft this great release? One of my partners, our associates did. I mean, we're relying – you know, we're not relying on the part of the release that released Mr. Hansen from liability from everything, you know, from the beginning of time. You're relying on specific language that relates to the – Handling of the estate and trust. And there's never been a case – Not that there isn't a first time for everything. Not that there isn't a first time for everything where a release like this hasn't been enforced. And I know that the cases are getting stricter about enforcing, you know, whether to enforce releases or not. But this one is a pretty specific release. And if you're not going to enforce a release like this, I don't know what ever is going to be enforced. I mean, it's a pretty plain argument. I mean, it had to be in the contemplation of the plaintiff here when he signed this release that he wasn't going to be able to sue Mr. Hansen for what Mr. Hansen did in handling his trust. Mr. Hansen had attorneys, not Mr. Johnson at the time, but another attorney when he signed this release. You know, Mr. Hansen didn't hide anything. The plaintiff had the federal tax returns at the time. Nobody pulled the wool over anybody's eyes. And if he didn't realize he had a cause of action, if there's really negligence, he still released him. And so we're standing. In the original claim that was not disputed as part of the release, did it involve the preparation of the returns? No, it just involved only the Illinois estate return. But it was a return. No question. It was a tax return. Right, okay. So there was already contemplated by the parties that there had been an error in the handling of the filing of a tax return. Whether it's federal or state, that was in contemplation of the parties. That's correct, Your Honor. Now, were you at the trial court when the court indicated, or was another attorney there? The court said she was having trouble. She couldn't understand the Supreme Court case. Do you know what case she was referring to? She was referring to, which one was it? Whitlock? What case? I don't know from her. It was. Which one was she talking about? It was farm credit. Farm credit. Farm credit. Well, you know, I don't have farm credit up here with me. Isn't that the Whitlock case? Pardon? Isn't farm credit Whitlock? Farm credit. Oh, farm credit versus Whitlock. Okay, I'm sorry. That's Whitlock. That is Whitlock, Your Honor. That was what she was saying she was struggling with. All right. Right, and it contains this general language. Factually, it's indistinguishable, but it does contain this language about general releases, which I'm not putting my finger on, unfortunately. All right, well, I just wondered. You've answered my question about which case she was referring to. I thought it was farm credit versus Whitlock. Yeah, it is Whitlock, Your Honor. All right. And contemplation of the parties, which she also struggled with. All right. But, you know, I read contemplation of the parties, or my side of the case does, is you look at the language of the release, and you have to determine from the language of the release what was in their contemplation, and you can't do this after-the-fact thing where they, you know, you subjectively look into their minds and let them deny the language of the agreement that they signed. So that pretty well sums up. I mean, it's a simple position. I don't know how I can go much farther with it other than to say that there is a strong policy in favor of releases, and it sort of undermines the policy when you can't enforce a specific release like this. But I don't know. I'm sorry. Well, all right. I mean, I think we understand your position on that. You're also arguing, though, that somehow a release would bar, by principles of race, judicature. Yeah, I don't want that to get lost because it wasn't extensively brief. But I mean, there were. But aren't there cases that say pretty much the opposite of what you're trying to argue? That the first issue, whether a release, that when the court dismisses a case based on a settlement of the parties, that that really isn't any hearing on the merits. How would that fit into the elements? I don't know. You know, if there's other cases that we didn't brief. I don't know if that's true when there's actually a dismissal with prejudice and a specific finding. Well, I think there's cases that say that generally just a dismissal by stipulation does not amount to a hearing on the merits. I am aware of this. Your stronger argument is the first one. Is that what you're saying? I'm sorry. I didn't mean to talk over you. No, that's all right. I am generally aware that the consent judgment and whatnot, cases that you're right, those are not adjudications. But I really think there isn't a distinguishable. I don't mean to be asking you questions. But you tell me how it is. Rhetorical questions. I think when there's actually, when the order provides that there's a dismissal, that's when there's actually an order entered with prejudice and it provides, as this one did, that it's a bar to any claim or cause of action asserted, which could have been asserted that the party is bound by it. I did cite a case of that effect anyway. Yes. And I had jeopardized it. But perhaps I did miss something. No, I'm just asking what I feel is a pertinent question. And we didn't. And I understand what your position is. Okay. Well, thank you. And I would ask, it is a 308 appeal, so I guess I'm not asking strictly for a reversal, but I would ask that the court answer the questions in the affirmative that, yes, the release bars the case, and, yes, so does race to the counter. Thank you, Your Honor. Okay. Mr. Johnson. Mr. Justice, please. Mr. Stoltenberg. Tell us, what's the matter with this release? It doesn't say a word about taxes. And the law is, as you already know, that you cannot release claims you don't know about. Well, doesn't it say all claims known or unknown? It does. But that's not what the Supreme Court of Illinois has said, and it's not what the appellate court, including this district, said recently in a long opinion by Justice Truman. You don't release claims you don't know about. Well, now, I think that there's a slight difference in what you're saying, and that is that in a broad general release, you don't release claims, or it's not a matter of fact that all claims are released, that you didn't have knowledge of when you have this umbrella general release. I don't know that the cases say that that's the same rule when you have a specific release that does talk about specific claims that you're giving up. If I may, Your Honor, I'd like to refer to a case, the Justice Truman case that came down after we filed our briefs. You didn't cite that in a motion or anything like that? Well, are you asking to cite additional court now? If I may, yes. I'm asking morally for permission to cite this case that came down in August. What's the name of the case? The name is Janowiak, J-A-N-O-W-I-A-K, against Tiesi, T-I-E-S-I, 4-0-2-11-3, 1987. It was filed, I said August, June 30, 2010. And in that case, I'm not going to get into all the facts. I just want to refer to the language that was in the release. It was a lawyer who was alleged to have participated with a son in ripping off the father and an appended brother. And there was a release. And the release says, I do hereby release, this is at page 1014 of 4-0-2-11-3. I do hereby release, hold harmless, and indemnify Angelo F. Tiesi, his heirs and assigns from any and all liability, and this is the key, relating to his acts or failure to act as trustee of the Michael Janowiak Trust. I don't see how that's different from what we, and in that instance, the panel held that that release was not enforceable. Well, the language here is any and all claims arising out of or in any way related to the obligations, duties, and management or administration of the estate and or trust, Hansen and EPPE's fees and expenses, and the rending of professional services by Hansen, the firm of Per K. Hansen and EPPE, and any and all claims which were asserted in the litigation in law or equity. Now, it wasn't the original complaint. There was a complaint in this case. That's how you got it settled. In that complaint weren't there allegations of the improper handling of the Illinois tax return? In the sense that the claim was, two parts, really. The claim was Hansen failed to pay a penalty that he promised to pay and then took money out of the estate to pay part of that claim, the penalty assessed by the state. And the other part of the claim was that he made up a series of bills to, in effect, shield or hide the fact that he had improperly taken money out of the estate. So the claim was by Hansen, oh, you owe me more money than that estate money that I took anyway, so in essence it doesn't matter. That was the claim that was presented in the probate court. It got settled for $35,000. And this document was, in fact, drafted and presented to the probate judge who signed off on it. But, and that's at the end of December of 2005. In September of 2006, this was a 619 motion before Judge McGrath. In September of 2006, my client is told by Mr. Martin, one of the defendants and accountant, in essence, and this is in his affidavit, you know, there are a lot of fees that weren't deducted from the federal estate tax return that should have been. And the case in the probate court was strictly on this issue of penalty regarding the Illinois Generation Skipping Tax. There are a lot of fees that should have been taken, that could have been taken, ends up to be about slightly less than $800,000 in deductions that were available that were not taken for this case in the probate court and settled for $35,000. In addition, Mr. But may I just interrupt you and say that this release talks about any and all claims arising out of or in any way related to the obligations, duties, and management or administration of the estate and the rendering, well, rending it says, of professional services. So what was that directed at? It wasn't directed at just what had been alleged, but what else was wrong with the rendering of professional services? And I guess what you're saying is that those can never be released? I'm not saying that at all. All right. But I am saying that in the context of this case, I think it's a fact-intensive issue, and I think that's what Judge McGrath was saying. Well, I know she was saying that because I was there. It's a fact-intensive issue. I've got the affidavit of my client. I've got the affidavit of Sherman Magidson, who was one of the lawyers who got fees in handling a part of a litigation with Florida State University, and Paul Shapiro, who was involved in the handling of the estate. Mr. Magidson and Mr. Shapiro both say in their affidavits they were hired not to do Mr. Magidson, who was involved in the Florida State case, and Mr. Shapiro with regard to winding up the estate, and then Richard Miller, who was then with Novak de Macy, was involved in the Florida State case too. He had nothing to do with this tax issue. My position will be, if we survive this appeal, that it was reasonable to infer, because they were talking about what Hanson did with regard to the penalties on the Illinois return, that excludes anybody ever thinking about the federal estate tax return. And Mr. Goodman says he had no knowledge about it. He's the one who signed the release. But Mr. Magidson and Shapiro both say they had no knowledge about it, as does Mr. Miller. But aren't these alleged failures that occurred at the time that the release – the release had been agreed to? The tax bill was there at the time the release was signed, although he didn't know about the failure to take all these deductions. But he knew that there were problems with the representation. Well, he knew that Hanson had taken money out of the estate to pay a penalty that he himself had positively incurred and that he himself promised he would pay out of his own pocket. That's what he knew. Nothing else. It was only nine months later that he finds out about all these federal estate tax deductions that were available and were not taken. Will there ever be a release then? I mean, can you really release any claim that existed if it's specific? You could in this case if you said obligations, duties, including taxes of all kinds, levies to the state or county or city. If you said that, we wouldn't be here. But these relate to his obligations, duties, management, and administration of the estate, and certainly the rendering of professional services. That's certainly the basis of our malpractice case. There's no statement about specifically taxes. I mean, I don't know. I thought the language was trying to encompass the professional services. Well, our basis for our malpractice case is that he mishandled it. The fact that it's not referred to specifically in terms of an obligation, as I said, I can see if it said taxes or levies or penalties due to the state or county or federal. But haven't the cases drawn a distinction between a general release that says, you know, from any claim beginning from the beginning of time until the end? That's considered a general release. Yes. Once you go into the language of devoting it to a particular situation or claim, it's no longer considered this broad general release. It's considered specific. It's directing the parties to hear obligations, duties, management, and administration of the estate or trust and professional services by an attorney and his firm. So that's still broad general, you're saying. Yes, it is. And I cite this case that I just got permission to cite to the court. Well, we haven't. No, I know. And I know it's late, but it's important, I think, because it's from this district, and I think it's right on point. They said the release wasn't enforceable. And as I concede, I'm repeating myself now and I won't do that, taxes, levies, obligations, we wouldn't be. What were the claims in the case that you've cited? They were with regard to an allegation that a lawyer aided and abetted a son from undervaluing the stock in a family business to the detriment of his brother and his father, and the lawyer was a trustee. I also submit that Mr. Hansen had a duty, as I said in my brief, and I don't want to waive anything, but I'm not going to go through it, had a duty on his way out the door in January to say, by the way, you may want to take a look at the federal estate tax return. And also this argument about res judicata, I think if the release is no good, then res judicata doesn't apply. So I ask you to affirm Judge McGrath. To answer the question. All right. I'm going to ask you to do one thing within the next 48 hours, file a motion before this court for us to consider that case. I'll file it. Yes, sir. Thank you. Okay. Rebuttal. He's going to file a motion. I guess I get to file a response. Right? Yes. Certainly. I'm not really sure I have anything to add. But I will note that when the first case was settled, it was not only was $35,000 paid, a $110,000 fee claim was waived. And, again, Mr. Plaintiff was represented by counsel. He did have an accountant at the time. The same accountant that discovered this mistake that gave rise to the present suit was there at that time as well. It all really hinges, though, on the settlement, regardless of all these detailed facts, as I think the court will understand and decide one way or the other. So I just ask that you rule in my favor. If you exceed that, thank you. Thank you very much. I think you guys did a terrific job in your presentation and in your briefs, and we'll take the case under advisement. Thank you.